UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALLEN HARVEY MCNEAL,<br><br>                    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:11-cv-05917-KLS<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds for the reasons set forth below, that defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On January 17, 2008, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of November 5, 2007, due to major depression, mild mental retardation and a learning disability. See Administrative Record ("AR")

ORDER - 1

14, 109, 113, 190.  Both applications denied were upon initial administrative review on May 28, 2008, and on reconsideration on September 30, 2008.  <u>See</u> AR 14, 61, 64, 70, 73.  A hearing was held before an administrative law judge ("ALJ") on April 13, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert.  <u>See</u> AR 28-54.

On May 24, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. <u>See</u> AR 14-23.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on September 16, 2011, making the ALJ's decision defendant's final decision. <u>See</u> AR 1; <u>see</u> <u>also</u> 20 C.F.R. § 404.981, § 416.1481.  On November 8, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision.  <u>See</u> ECF #1.  The administrative record was filed with the Court on January 24, 2010.  <u>See</u> ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; and (2) in discounting plaintiff's credibility.  The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination.  <u>See</u> <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  <u>See</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Fife v. Heckler</u>, 767

ORDER - 2

F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

ORDER - 3

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.   Dr. Brown

The ALJ found in relevant part as follows:

A psychological evaluation of the claimant was also performed by Michael Brown, Ph.D., in May 2008. The doctor opined the claimant had moderate difficulties learning new tasks, and had marked difficulties interacting appropriately with the public and in his ability to respond appropriately and

ORDER - 4

      tolerate the pressures and expectations of a normal work setting (3F/3).  In addition, Dr. Brown noted the claimant successfully completed a three step command (3F/3).  Lastly, the doctor stated the claimant's depression is very treatable (3F/4).  I gave Dr. Brown's opinion some weight because only some of his opinions are in accordance with the medical evidence as a whole.  For example, the claimant's demonstrated ability to attend church on a regular basis and meet with friends suggests he is capable of interacting with others and is not as limited as Dr. Brown opined.

AR 21.  Plaintiff argues, and the Court agrees, these stated reasons for discounting Dr. Brown's opinion are not legitimate.  Inconsistency with a claimant's reported activities of daily living can be a valid basis for rejecting a physician's opinion. See Morgan, 169 F.3d at 601-02  (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that other evidence of claimant's ability to function, including reported activities of daily living, contradicted that conclusion).  As noted by plaintiff, though, the record in this case fails to show the extent, nature or frequency of his attendance at church and time spent with friends, and thus is not necessarily indicative of an ability to function in a work setting, let alone function at a competitive level. See AR 44-45, 219.

      In addition, as plaintiff points out, his ability to interact with others does not necessarily impact the mental functional area of responding appropriately to and tolerating the pressures and expectations of a normal work setting, in which Dr. Brown found he had a marked limitation.  AR 298.  Nor does it have much to do with the areas of learning new tasks, exercising judgment and making decisions, performing routine tasks, caring for himself, controlling his physical or motor movements, and maintaining appropriate behavior, in which Dr. Brown determined him to be moderately limited. Id.  While the Court finds the ALJ's restriction of plaintiff to simple tasks fairly encompasses the moderate limitation concerning routine tasks (see AR 19), as discussed in greater detail below, the residual functional capacity with which the ALJ assessed him fails to

ORDER - 5

account for the other moderate to marked functional limitations found by Dr. Brown, nor did the ALJ explain why he declined to adopt them.  As such, the ALJ erred.

      B.      <u>Dr. Krueger</u>

Plaintiff also challenges the ALJ's following findings:

> . . . Keith Krueger, Ph.D., performed an evaluation of the claimant in September 2008, and opined the claimant had moderate difficulties learning new tasks and moderate difficulties interacting appropriately with the public (8F/3).  I gave great weight to Dr. Krueger's opinion because it is in accordance with the medical evidence as a whole and the claimant's activities of daily living.

AR 21.  Specifically, plaintiff argues that although the ALJ stated he gave great weight to Dr. Krueger's opinion, he failed to explain why he did not adopt all of the moderate mental functional limitations Dr. Krueger assessed, such as learning new tasks, exercising judgment and making decisions and responding appropriately to and tolerate the pressures and expectations of a normal work setting.  <u>See</u> AR 19 (only restricting plaintiff to performing simple work with minimal public interaction), 325.  Again, as with Dr. Brown, the ALJ's failure to account for these other functional limitations in his decision was error.

      C.      <u>Dr. McRae</u>

In late May 2009, John McRae, M.D., filled out a Certification for Medicaid form, in which he stated in relevant part:

> Dr. Brown's earlier eval and current intake at Willapa counseling both show [plaintiff] to have major depression -- can't retain work, in the service and then released, has appears [sic] to have poor personal care, is slowed, appears he would need supported work to deal with his difficiencies [sic] on the job. . . .

AR 360.  With respect to Dr. McRae's opinion, the ALJ found in relevant part as follows:

> . . . [Dr. McRae's] opinions are not supported by the evidence of record.  The claimant noted he has no problems performing personal care (10E/2).  In addition, the claimant's work history reflects he is capable of working with his

ORDER - 6

       impairments (4D/10).  Therefore, little weight was given to Dr. [Mc]Rae's
       opinion.

AR 21.  Plaintiff argues these are not valid reasons for rejecting Dr. McRae's opinion, asserting that the record shows his ability to handle his personal care is variable and that the record lacks evidence he suffered from depression at his current severity level during the past years when he was working.  The Court disagrees the ALJ erred here.

      While plaintiff has been observed to have issues with personal care at times (<u>see</u> AR 298, 321, 362-63, 365), the record for the most part shows he has had no difficulties therewith (<u>see</u> AR 250, 260, 263, 265, 280, 290, 325, 331, 369, 382-87).  Indeed, as noted by the ALJ, plaintiff largely has reported having no problem in his ability to care for his personal needs. <u>See</u> AR 208, 216, 231.  Even if the evidence here can be said to be mixed, furthermore, it is not for the Court to second guess the ALJ's evaluation thereof. <u>See</u> <u>Sample</u>, 694 F.2d at 642 (where medical evidence is not conclusive, "questions of credibility and resolution of conflicts" are solely ALJ's function); <u>Morgan</u>, 169 F.3d at 601; <u>Allen</u>, 749 F.2d at 579 (if evidence admits of more than one rational interpretation, Court must uphold defendant's decision).

      As for Dr. McRae's reference to apparent inability to retain work, the record does show that he has performed a number of jobs during the period subsequent to his alleged onset date of disability, and that while many of those jobs were fairly short-lived – which plaintiff claims was due to his inability to work at the pace required by his employers and/or to difficulties being able to focus and concentrate (<u>see</u> AR 35-40, 190, 250, 273-74) – the evidence reveals that some, if not most, of those jobs ended for reasons other than his mental health symptoms and limitations (<u>see</u> AR 36-37, 190, 260, 279, 331, 365, 373, 383).  For example, plaintiff reported in early May 2009, that most of his jobs were "seasonal or labor," indicating the jobs he did were by their very nature short-lived. AR 373; <u>see</u> <u>also</u> AR 263, 363.  He also has reported being fired many times

ORDER - 7

for calling in sick too often, but the record fails to show this necessarily was related to his mental impairments. See AR 190, 273.

Plaintiff also was fired from another job due to an on-the-job injury. See AR 36-37, 382. Indeed, it was noted in late May 2009, that it was "difficult to find him a job because he doesn't follow through or gets hurt on the job." AR 365; see also AR 362 ("His last job lasted 2 days. He tends to injure himself on the job."). Accordingly, as with the issue of plaintiff's ability to handle his personal care, the evidence regarding plaintiff's past jobs is at most mixed, and thus the Court will not second guess the ALJ's findings in regard thereto. See Sample, 694 F.2d at 642; Morgan, 169 F.3d at 601; Allen, 749 F.2d at 579.

D.   Mr. Pingree and Mr. Burris-Fish

Plaintiff takes issue as well with the ALJ's treatment of the following medical evidence:

> When the claimant was at Willapa Counseling Center he was treated by several different counselors, including Robert Pingree, LICSW. Mr. Pingree opined on May 6, May 2009, the claimant had a [global assessment of functioning] GAFscore of 39.[1] However, the notes also state on August 6, 2009, the claimant was enthusiastic, applying for jobs, and was planning to move to Idaho (12F/2). Therefore, Mr. Pingree's opinion is not in accordance with the medical notes. Furthermore, evidence from other health care professionals and other sources may not be used to establish the existence of a medically determinable impairment, but may be used to show the severity of the individual's impairment(s) and how it affects the individual's ability to function . . . Therefore, his opinion is given little weight because he is not an "acceptable medical" source . . .

AR 21 (internal footnote omitted). The Court agrees with plaintiff that it was improper for the

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). As noted by the ALJ (see AR 21 n.1), "[a] GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009) (quoting Edwards v. Barnhart, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich. 2005)); see also Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) (GAF score of 31-40 is extremely low, indicating major impairment in several areas).

ORDER - 8

ALJ to discount the GAF score assessed by Mr. Pingree just because he is not an "acceptable medical" source. Although an ALJ may give less weight to the opinions of those who are not acceptable medical sources than to those who are, the ALJ did not do this, but rather appears to merely have rejected Mr. Pingree's assessment solely on the basis that he was not the latter. See Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996); 20 C.F.R. § 404.1513(a), (d), 20 C.F.R. § 416.913(a), (d) (licensed physicians and licensed or certified psychologists constitute "acceptable medical sources"). Indeed, the ALJ's treatment of Mr. Pingree's GAF score in this manner goes directly against defendant's own position in regard to other medical sources such as Mr. Pingree:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because . . . "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, . . . an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. . . .

Social Security Ruling ("SSR") 06-03p, 2006 2329939 *5.

That being said, the Court disagrees with plaintiff that the ALJ erred in rejecting the GAF score Mr. Pingree assessed for his other stated reasons. Plaintiff argues there is no indication in the record that he actually applied for the jobs he said he was going to, that he reported being afraid to do so, and that he never actually went through with moving to Idaho. But the point is the particular treatment note in which the above was reported indicates that plaintiff overall felt he was capable of engaging in employment – even though he may have shown some fear at the time – which is completely at odds with a GAF score of 39. See AR 362. In addition, as further noted by the ALJ, that GAF score was "not in accordance" with the other treatment notes issued by plaintiff's providers at the time, including those from Mr. Pingree, which also indicate a very active effort, and even ability, on plaintiff's part to obtain work or pursue other similar activities,

ORDER - 9

such as entering the military. See AR 260, 263, 265, 270, 280, 321, 363, 365, 369, 382-86, 390. As such, the ALJ did not err in rejecting Mr. Pingree's assessed GAF score.

Plaintiff argues the ALJ erred as well in failing to address a GAF score of 45[2] assessed by another of plaintiff's mental health treatment providers, Jamey Burris-Fish, ARNP, in late June 2007. See AR 250. The Court agrees the ALJ erred in failing to address it, but finds such error to be harmless in this case. An error is harmless if it is "inconsequential" to the ALJ's "ultimate nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision."). Given that the mental status examination performed by Ms. Burris-Fish was largely unremarkable (see AR 250) – and as discussed above, the ALJ properly discounted Mr. Pingree's assessed GAF score on the basis that it was not in accordance with the treatment records, including Mr. Pingree's own notes – it is unlikely the ALJ would have changed his decision based on the GAF score of 45, and therefore the Court declines to reverse the ALJ's decision on that basis as well.

II.    The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's

---

[2] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.")

ORDER - 10

determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part on the basis that his claims of disabling limitations are not consistent with the medical evidence in the record. See AR 19-20. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). However, because as discussed above the ALJ erred in evaluating the medical evidence from Dr. Brown and Dr. Krueger, it was improper for the ALJ to rely on this reason for discounting plaintiff's credibility.

The ALJ also discounted plaintiff's credibility in part because he "has received only

ORDER - 11

conservative and routine treatment." AR 20.  This too can be a clear and convincing reason for discounting a claimant's credibility. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request, serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation).

But as noted by plaintiff, it is not clear what additional treatment besides the mental health counseling and medication he already has received the ALJ believes he should have pursued or would have been more effective.  Further, "more aggressive forms of treatment such as surgery" (AR 20), would not help plaintiff with his mental health impairments upon which he based his disability claim.  Accordingly, here too the Court finds the ALJ provided an improper reason for discounting plaintiff's credibility.

On the other hand, the ALJ noted that plaintiff's depression "had improved" and that he "was told he no longer needed any prescription medication." AR 20; see also AR 249 (reporting that he currently was "not on any medication," that previously he had "had a good response" to medications and that he was told "he no longer needed medications," all of which accordingly were "discontinued").  The ALJ may discount a claimant's credibility on the basis of medical improvement, and he properly did so here given plaintiff's above report to his treatment provider at the time. See Morgan, 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601

ORDER - 12

(9th Cir. 1998).

The ALJ also properly discounted plaintiff's credibility for the following reason:

> I have considered the claimant's work history in assessing his credibility. As mentioned above, the record reflects work activity after the alleged onset date. Although that work activity does not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported. A query of the claimant's work history discloses he worked at Jack's Country Store Inc. and at RAM Landscaping Inc. in 2008 (4D/10). Therefore, the claimant's work after the alleged onset date suggests he is capable of performing substantial gainful activity.
>
> The undersigned commends the claimant for the number of jobs that he has attempted. However, most of these jobs consist of work that was completed for only a short period of time. The claimant's work history indicates he earned no income in 2004 (4D/14). His work history demonstrates that he often did not perform substantial gainful employment even prior to his alleged onset date.

AR 20. The undersigned finds here too the ALJ did not err in relying on plaintiff's work history in finding him to be not fully credible. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (ALJ properly found claimant's extremely poor work history and lack of propensity to work in her lifetime negatively affected her credibility regarding her inability to work); Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment).

Plaintiff argues his work attempts were no greater than what he testified to at the hearing. But the point is that, as found by the ALJ, the jobs plaintiff held subsequent to his alleged date of disability, indicate a greater level of functioning than would be indicated by his testimony and reports concerning his daily activities, as well as his claims that he is incapable of performing any work. Plaintiff further notes the ALJ found his work attempts did not constitute substantial gainful activity. But as discussed above, the evidence in the record shows – or at the very least strongly indicates – that a number, if not most, of the jobs plaintiff performed ended for reasons

ORDER - 13

other than due to his alleged disabling impairments. That is, the weight of the evidence shows the fact that he was not engaged in substantial gainful activity both before and after his alleged onset date of disability, was not primarily due to those impairments.

Lastly, the ALJ discounted plaintiff credibility because his activities of daily living were "quite involved." AR 21. Specifically, the ALJ noted plaintiff was "able to mow the yard, prepare his own meals, and wash the dishes," which "suggest a level of functioning greater than what he has alleged in his application and testimony." Id. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." Id.

Plaintiff argues the record fails to show the daily activities he has engaged in, consumed a substantial part of his day or were necessarily transferable to a work setting. Other than in regard to plaintiff's work history discussed above, the Court agrees. See AR 43-46, 205, 208, 217-19, 331. Nevertheless, the fact that some of the reasons for discounting plaintiff's credibility were improper, this does not render the ALJ's credibility determination invalid, as long as that

ORDER - 14

determination is supported by substantial evidence in the record, as it is in this case for the reasons discussed herein. See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

III.	This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to the medical evidence in the record regarding plaintiff's mental functional limitations, it is far from clear that the ALJ's residual functional

ORDER - 15

capacity assessment – and therefore his determination that plaintiff is capable of performing to his past relevant work at step four of the sequential disability evaluation process – is supported by substantial evidence.[3] Remand for further administrative proceedings, therefore, is warranted in this case.

It is true that where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," such as in regard to Dr. Brown and Dr. Krueger, that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where, as here, the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and thus the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). Further, "[i]n cases where the vocational expert has failed to address a claimant's limitations as established by improperly discredited evidence," the Ninth Circuit "consistently [has] remanded for further proceedings rather than payment of benefits." Bunnell, 336 F.3d at 1116. Given that

---

[3] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity to perform heavy work, with the mental functional limitations that he could perform simple work with only minimal public interaction. See AR 19. The ALJ's errors in evaluating the medical opinion evidence from Dr. Brown and Dr. Krueger, however, call this RFC assessment into question. In addition, because the ALJ relied on that assessment to find plaintiff to be capable of returning to his past relevant work at step four (see AR 22), the propriety of that finding also is questionable. As such, the ALJ's non-disability determination cannot be upheld at this time.

ORDER - 16

the vocational expert at the hearing did not expressly address the specific mental limitations Drs. Brown and Krueger assessed, the Court declines to apply the credit as true rule.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 13th day of July, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 17